IN THE SUPREME COURT OF NORTH CAROLINA

No. 91A25

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

DALLAS JEROME MCGIRT

On discretionary review pursuant to N.C.G.S. § 7A-31 of a divided decision of the Court of Appeals, 298 N.C. App. 223 (2025), vacating judgments entered on 1 June 2023 by Judge G. Bryan Collins in Superior Court, Wake County and remanding for a new trial. Heard in the Supreme Court on 18 February 2026.

> *Jeff Jackson, Attorney General, by Elizabeth B. Jenkins, Special Deputy Attorney General, for the State-appellant.*

> *Mary McCullers Reece for defendant-appellee.*

EARLS, Justice.

In this case, we consider whether the Court of Appeals erred in concluding that defendant, Dallas Jerome McGirt, did not knowingly, intelligently, and voluntarily waive his right to counsel. After cycling through five court-appointed attorneys over the course of approximately fifty months, Mr. McGirt twice filed handwritten documents captioned "Waiver of Counsel"—the first of which expressly stated his desire to "go Pro Se and have Court Appointed Counsel on stand-by." The trial court conducted a colloquy with Mr. McGirt in open court and found that he had waived

counsel. The Court of Appeals reversed and granted a new trial. For the reasons stated, we reverse the decision of the Court of Appeals.

## I.    Background

On 8 April 2019, defendant Dallas Jerome McGirt was indicted for six counts of statutory sexual offense with a child and ten counts of indecent liberties with a child. On 12 March 2019, the trial court found Mr. McGirt to be indigent and ordered that he be represented by counsel from the Wake County Public Defender's office.

Two months later, the assigned counsel moved to withdraw because the Public Defender's office had represented the mother of a victim, a probable witness at trial, during the time of the alleged incidents. On 14 May 2019, the Honorable Paul Ridgeway found that the conflict existed and allowed counsel to withdraw. The trial court then appointed Mr. James Wilson to represent Mr. McGirt. On 18 November 2019, after Mr. Wilson left private practice to join the Attorney General's Office, the Honorable Rebecca Holt allowed his former firm to withdraw and ordered that counsel outside the Public Defender's office be appointed.

In November 2019, the court appointed Ms. Cindy Popkin-Bradley. On 3 May 2021, Ms. Popkin-Bradley moved to withdraw, stating that for "personal reasons" she "cannot be effective in defending Mr. McGirt." The Superior Court released Ms. Popkin-Bradley that same day and ordered the Public Defender to appoint substitute counsel, noting conflicts with multiple attorneys and directing that outside counsel be appointed.

Ms. Margaret Lumsden was appointed as Mr. McGirt's fourth attorney in May 2021. On 19 April 2022, Mr. McGirt filed a handwritten motion expressing dissatisfaction with Ms. Lumsden's representation, including that she had refused to meet his objectives and had misrepresented to him that she was on vacation. He asked the trial court to "dismiss" her from his case. On 22 April 2022, Judge Ridgeway entered an order citing N.C.G.S. § 7A-457 and directing that there be an in-person colloquy in open court before the court granted the request to dismiss court-appointed counsel.

On 16 May 2022, Mr. McGirt filed a handwritten document captioned "Waiver of Counsel." In it Mr. McGirt cited N.C.G.S. § 7A-457 and asked to "go Pro Se and have Court Appointed Counsel on stand-by." On 3 June 2022, Judge Holt entered an order allowing Ms. Lumsden to withdraw and directing the Public Defender's Office to appoint outside counsel.

Mr. Charles Christopher was appointed as Mr. McGirt's fifth attorney. On 22 August 2022, defendant wrote to Judge Ridgeway stating that Mr. Christopher had not come to see him about his case and expressing his desire to "fire my attorney Mr. Charles Christopher." On 2 December 2022, Mr. McGirt filed with the court a letter he had written to Mr. Christopher setting forth counsel's failure to communicate with him.

On 4 April 2023, Mr. McGirt filed a second handwritten document captioned "Waiver of Counsel" listing reasons for his dissatisfaction with his current and

previous counsel. Mr. Christopher filed a motion to withdraw.

On 4 May 2023, three weeks before the matter was set for trial, counsel's motion to withdraw came on for hearing. Mr. McGirt addressed the court, stating that he had filed the waiver of counsel "on March 29th" and that he had "been waiting for a response ever since." The trial court acknowledged the filing and noted that Mr. Christopher was Mr. McGirt's fifth attorney.

When the trial court asked defendant about the "waiver of counsel" he had filed, Mr. McGirt responded, "Yeah, that's what I—I filed it just to get him off my case." The trial court allowed counsel's motion to withdraw. The court then stated, "[w]e need to consider if you have effectively waived your right to the assistance of court-appointed counsel anyway and that you need to represent yourself or if we need to appoint standby counsel to assist you with this case." When asked what he was asking the court to do, Mr. McGirt responded by criticizing the performance of his prior counsel, stating, "I've been held almost 50 months, and it doesn't make sense," and recounting specific complaints about his third attorney's failure to request discovery. At no point during the hearing did Mr. McGirt request the appointment of a sixth attorney.

The State requested that the trial court appoint standby counsel and allow the trial to proceed. The trial court then conducted a colloquy, confirming that Mr. McGirt was able to hear and understand the proceedings, that he could read and write, that he understood his right to plead not guilty, that he had not recently consumed

intoxicating substances, that he understood the right to be represented by counsel, and that he was aware of the elements of the offenses charged against him. On the question of sentencing, the trial court confirmed that Mr. McGirt recognized "the possibility of . . . 25 years minimum" for each of the six statutory sex offense charges, to which Mr. McGirt responded, "I'm very well aware, Your Honor." The trial court did not separately address the sentencing range for the ten Class F felony charges or the maximum sentence of life without parole for the B1 felonies. Mr. McGirt was fifty-three years old at the time.

The trial court concluded that Mr. McGirt had waived his right to the assistance of counsel and then assigned standby counsel. The court's order dated 4 May 2023 stated: "DEFENSE MOTION TO WITHDRAW IS ALLOWED. DEFENDANT WAIVES COUNSEL AND THE PUBLIC DEFENDERS OFFICE IS TO APPOINT STAND BY COUNSEL."

On 18 May 2023, Mr. McGirt was brought to court to receive discovery materials, and the trial court ordered that he have access to the law library to prepare for trial. On 22 May 2023, Mr. McGirt appeared before Judge Rozier and requested the appointment of counsel. Judge Rozier denied the request, finding that Mr. McGirt had previously waived his right to court-appointed counsel but noted that standby counsel, Mr. Liles, remained available and that Mr. McGirt was free to hire a private attorney.

On 30 May 2023, the day the matter came on for trial, the State filed a motion

to have standby counsel, rather than Mr. McGirt, examine the prosecuting witnesses. Mr. McGirt did not object, and the trial court allowed the motion. At trial, standby counsel questioned the prosecuting witnesses, and Mr. McGirt otherwise represented himself. The jury convicted Mr. McGirt of four counts of statutory sex offense with a child and ten counts of indecent liberties with a child. The trial court sentenced Mr. McGirt to minimum sentences totaling seventy-five years.

Mr. McGirt gave notice of appeal in open court. On 19 March 2025, the Court of Appeals vacated the convictions and remanded for a new trial, holding that Mr. McGirt had neither waived nor forfeited his right to counsel. *State v. McGirt*, 298 N.C. App. 223, 240 (2025).

## II.    Analysis

### A. Standard of Review

The right to counsel in a criminal proceeding is protected by both the United States and North Carolina Constitutions. U.S. Const. amend. VI; N.C. Const. art. I, §§ 19, 23. A criminal defendant also has the right to waive counsel and proceed pro se. *State v. Fenner*, 387 N.C. 330, 334–35 (2025). This Court reviews de novo a trial court's determination that a defendant has waived the right to counsel. *State v. Simpkins*, 373 N.C. 530, 533 (2020).

### B. Applicable Law

A defendant may voluntarily relinquish the right to counsel by way of waiver. Section 15A-1242 of the North Carolina General Statutes provides that "[a] defendant

may be permitted at his election to proceed in the trial of his case without the assistance of counsel." N.C.G.S. § 15A-1242 (2025). For a waiver to be constitutionally valid, the defendant must "clearly and unequivocally" express a desire to proceed pro se, and the trial court must ensure that the waiver is knowing, intelligent, and voluntary. *State v. Thomas*, 331 N.C. 671, 673–74 (1992). The trial court satisfies this obligation by conducting the "thorough inquiry" mandated by section 15A-1242, which requires the court to be satisfied that the defendant has been advised of the right to counsel, understands and appreciates the consequences of proceeding without counsel, and comprehends the nature of the charges and the range of permissible punishments. *Id.* at 674.

Critically, the statute requires only that the defendant make an "election" to proceed without counsel—it does not prescribe a particular form or magic words through which that election must be communicated. *See id.* at 674–76. A defendant's clear and unequivocal expression of the desire to proceed pro se may be assessed in light of the totality of the circumstances, including written filings, in-court statements, and the defendant's overall course of conduct. *See State v. Atwell*, 383 N.C. 437, 447 (2022).

As the Court of Appeals has noted, "[a] written waiver is important evidence to show a defendant wishes to act as [his] own attorney." *State v. Jenkins*, 273 N.C. App. 145, 151 (2020). Although a written waiver legitimately creates a presumption that the defendant's waiver of counsel was knowing, intelligent and voluntary, it is

not a substitute for the requirements of N.C.G.S. § 15A-1242. *Id.; see also State v. Kinlock,* 152 N.C. App. 84, 89–90 (2002), *aff'd per curiam,* 357 N.C. 48 (2003) (noting that when a defendant executes a written waiver, it is presumed that the waiver of counsel was knowing, intelligent and voluntary "unless the rest of the record indicates otherwise" (cleaned up)). While providing for a written waiver, our statutes also clearly state that "[a]ny waiver of counsel shall be effective only if the court finds of record that at the time of waiver the indigent person acted with full awareness of his rights and of the consequences of the waiver." N.C.G.S. § 7A-457(a) (2025).

## C. Mr. McGirt Clearly and Unequivocally Expressed the Desire to Proceed Pro Se

Viewing the record as a whole, the evidence establishes that Mr. McGirt clearly and unequivocally expressed his desire to waive counsel and proceed pro se. That expression was not confined to a single moment but was the culmination of a sustained course of conduct spanning approximately fifty months and five appointed attorneys—a course of conduct that, particularly in its final stages, left no doubt as to Mr. McGirt's intentions. This course of conduct was then confirmed in the court's colloquy with Mr. McGirt at the hearing on 4 May 2023.

Mr. McGirt's first three attorneys were released for reasons not attributable to his conduct: his first counsel withdrew due to a conflict within the Public Defender's office; his second left private practice; and his third withdrew for personal reasons. We do not rely on these changes of counsel as evidence of waiver. They do, however, form the backdrop against which Mr. McGirt's subsequent actions must be

understood.

It is with the fourth and fifth attorneys that Mr. McGirt's conduct shifted from dissatisfaction with individual counsel to a clear pattern of rejecting appointed representation altogether. After Ms. Lumsden was appointed in May 2021, Mr. McGirt filed a handwritten motion in April 2022 seeking to "dismiss" her from his case. On 16 May 2022, he filed a document he himself captioned "Waiver of Counsel," in which he cited N.C.G.S. § 7A-457 and stated that he wished to "go Pro Se and have Court Appointed Counsel on stand-by." This filing was not ambiguous. Mr. McGirt invoked the statutory framework for waiver, used the term "Pro Se," and articulated precisely the arrangement he sought—self-representation with the assistance of standby counsel. That is, by definition, a waiver of the right to counsel. *See* N.C.G.S. § 15A-1243 (2025) (providing for appointment of standby counsel when a defendant elects to proceed pro se).

After Ms. Lumsden was released and Mr. Christopher was appointed as his fifth attorney, Mr. McGirt's dissatisfaction continued. He complained that Mr. Christopher had not communicated with him, and in December 2022 filed a letter detailing counsel's failures. On 4 April 2023, Mr. McGirt filed a second document captioned "Waiver of Counsel," again setting forth his dissatisfaction with appointed representation. Mr. Christopher thereafter filed his own motion to withdraw.

At the 4 May 2023 hearing, the trial court addressed both filings and Mr. Christopher's motion. When asked about the document he had filed, Mr. McGirt

stated that he had filed it "just to get him off my case." The Court of Appeals seized upon this statement as evidence that Mr. McGirt did not intend to waive counsel. We disagree. This single statement must be read in context—not in isolation. When the trial court asked Mr. McGirt what he was asking the court to do, he did not request new counsel. Instead, he complained at length about the inadequacies of his previous attorneys. He did not, at any point during the hearing, ask the trial court to appoint a sixth attorney. He had already twice filed documents he himself titled "Waiver of Counsel"—the first of which expressly requested to "go Pro Se"—and his conduct throughout the hearing was consistent with a defendant who had resolved to proceed without appointed counsel.

We do not suggest that any single filing or statement, standing alone, would necessarily constitute a clear and unequivocal expression of the desire to proceed pro se. But when a defendant files two written waivers of counsel, one of which uses the words "Pro Se" and invokes the governing statute, cycles through five appointed attorneys, and then appears before the trial court without requesting the appointment of a sixth, the totality of those circumstances constitutes a clear and unequivocal expression of the election to proceed without counsel within the meaning of section 15A-1242 and *State v. Thomas*, 331 N.C. 671 (1992).

**D. *McCrowre* and *Hutchins* Involved Different Circumstances**

Mr. McGirt relies on *State v. McCrowre*, 312 N.C. 478 (1984), and *State v. Hutchins*, 303 N.C. 321 (1981), for the proposition that a desire to change counsel is

not an expression of intent to waive counsel. But those cases involve very different facts that are material to determining whether a defendant has knowingly, intelligently, and voluntarily waived the right to appointed counsel.

In *McCrowre* the defendant signed a form captioned "WAIVER OF RIGHT TO ASSIGNED COUNSEL" at arraignment, but did so only because he expected to hire a private attorney. 312 N.C. at 479–80. When he was unable to retain private counsel and appeared for trial without an attorney, he immediately asked the court to appoint someone to assist him. *Id.* at 480. The record in *McCrowre* thus "clearly indicate[d] that when [the] defendant signed the waiver of his right to assigned counsel, he did so with the expectation of being able to privately retain counsel," and there was "no evidence that [the] defendant ever intended to proceed to trial without the assistance of some counsel." *Id.*

Mr. McGirt's case presents a markedly different record. Unlike the defendant in *McCrowre*, Mr. McGirt did not sign a waiver in reliance on his ability to hire private counsel. He filed two separate handwritten documents—months apart—each titled "Waiver of Counsel," the first of which expressly stated his desire to "go Pro Se." He did not, at the 4 May 2023 hearing, ask the court to appoint a sixth attorney. And the record reflects not a single, isolated waiver executed under a misapprehension but a consistent course of conduct across nearly two years in which Mr. McGirt rejected each appointed attorney in turn while simultaneously invoking the language of self-representation.

Likewise, the *Hutchins* principle that "[s]tatements of a desire not to be represented by court-appointed counsel do not amount to expressions of an intention to represent oneself," 303 N.C. at 339, does not control here. That principle applies where a defendant's statements, at most, reflect dissatisfaction with particular appointed counsel and a desire for a replacement. Mr. McGirt's statements went further. His 16 May 2022 filing did not merely ask for new counsel—it asked to "go Pro Se and have Court Appointed Counsel on stand-by." A defendant who uses the words "Pro Se," invokes the statutory waiver framework, and requests the specific arrangement contemplated by section 15A-1243 for defendants who elect self-representation has done more than express dissatisfaction with a particular lawyer. Mr. McGirt has expressed the desire to proceed without counsel.

**E. The Trial Court's Colloquy Satisfied N.C.G.S. § 15A-1242 Under *Fenner***

Mr. McGirt additionally argues that, even if he expressed the desire to proceed pro se, the trial court's colloquy was constitutionally deficient because the court failed to apprise him of the full range of permissible punishments for all charges. In this case, the trial court's colloquy substantially complied with the statutory requirement and substantiates Mr. McGirt's two written waivers of counsel.

At the 4 May 2023 hearing, the trial court confirmed that Mr. McGirt could hear and understand the proceedings, that he could read and write, that he had not consumed any intoxicating substances, that he understood his right to counsel, and that he understood the right to plead not guilty. The court then informed Mr. McGirt

that each of his six B1 felony charges carried a minimum sentence of twenty-five years. Mr. McGirt responded, "I'm very well aware, Your Honor." The trial court did not separately address the sentencing range for the ten Class F felony charges of indecent liberties with a child, each carrying a potential sentence of ten to fifty-nine months, and the court's phrasing—"not life"—may have understated the maximum for the B1 felonies, which in fact carried a maximum penalty of life without parole. N.C.G.S. §§ 14-27.28(b), 15A-1340.17 (2025).

This Court recently addressed a materially similar situation in *State v. Fenner*, 387 N.C. 330 (2025). In *Fenner* the trial court erroneously informed the defendant that he faced between 75 and 175 years in prison, when in fact he could have received multiple life sentences. *Id.* at 331. This Court concluded that "[i]f the trial court miscalculates the range of permissible punishments during the statutory colloquy, but both the miscalculation and the actual range are tantamount to the remainder of the defendant's life, the trial court complies with the statute." *Id.* at 335.

*Fenner* is directly on point: the same principle applies here. Mr. McGirt was fifty-three years old at the time of his trial. Six consecutive twenty-five-year sentences—the minimum the trial court communicated, which Mr. McGirt acknowledged hearing and understanding—would total 150 years. Whether Mr. McGirt understood his exposure to be 150 years or some greater figure encompassing the Class F felonies and the possibility of life without parole, either calculation was tantamount to more than the remainder of his life. There is no reasonable likelihood

that Mr. McGirt would have altered his decision to proceed pro se had the trial court correctly informed him of the full sentencing range for all the charges he faced. Under *Fenner*, the trial court's misstatement here does not render the colloquy constitutionally deficient.

## III. Conclusion

For the foregoing reasons, we hold that the trial court correctly concluded that Mr. McGirt had clearly and unequivocally expressed his desire to proceed pro se through his written filings, his in-court statements, and his overall course of conduct. Moreover, the trial court's colloquy, though imprecise as to the range of permissible sentences, substantially complied with N.C.G.S. § 15A-1242 because, under the standard set forth in *Fenner*, the miscalculation and the actual range of possible punishments both unequivocally amounted to more than his natural life. The Court of Appeals erred in concluding that his waiver of appointed counsel was not knowing, intelligent, and voluntary. Having concluded that the trial court was correct to find that Mr. McGirt knowingly, intelligently and voluntarily waived his right to court appointed counsel and that the court's colloquy satisfied statutory requirements, there is no need for us to consider whether Mr. McGirt forfeited his right to counsel in this matter. The decision of the Court of Appeals is reversed.

REVERSED.

Chief Justice NEWBY concurring.

I join the majority's conclusion that defendant waived his right to counsel. I agree also that our disposition of the case does not require us to consider whether defendant forfeited his right to counsel. Regardless, I write separately to address forfeiture in hopes of clarifying some lingering confusion about its relationship with waiver. I respectfully concur.

Although waiver and forfeiture are sometimes used interchangeably in casual parlance, the terms are not synonymous. *Contrast State v. McGirt*, 298 N.C. App. 223, 228, 235, 239, 913 S.E.2d 476, 480, 484, 487 (2025) (analyzing waiver, forfeiture, and "hybrid waiver by conduct with warning"), *with id.* at 244, 248, 913 S.E.2d at 490, 492 (Tyson, J., dissenting) (analyzing only "waiver of counsel" and "hybrid waiver and forfeiture" without a separate analysis for forfeiture).[1] They are separate concepts that address distinct concerns. Waiver guards the defendant's right to dictate his own defense. *See Faretta v. California*, 422 U.S. 806, 820–21, 95 S. Ct. 2525, 2533–34 (1975). Forfeiture protects the trial court's "legitimate interest in guarding against manipulation and delay." *State v. Simpkins*, 373 N.C. 530, 549, 838 S.E.2d 439, 454 (2020) (Newby, J., dissenting) (quotation omitted). Stated another way, waiver

---

[1] The dissent below was not alone in this misapprehension. The trial court incorrectly described forfeiture as an "effective[ ] waive[r]," and the State's petition for discretionary review at this Court focused exclusively on waiver—leading us to issue a special order directing the parties to brief both waiver and forfeiture.

ensures that counsel does not control the defendant, while forfeiture ensures that the defendant does not control the courtroom. The difference is particularly important because forfeiture implicates an additional consideration: appellate deference to the trial court's "fundamental authority over the courtroom." *Id.* at 542, 838 S.E.2d at 450.

I begin with waiver. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."[2] U.S. Const. amend. VI. But the Sixth Amendment does not mandate counsel. *Faretta*, 422 U.S. at 820–21, 95 S. Ct. at 2533–34. Rather, "[i]t speaks of the *assistance* of counsel, and an assistant, however expert, is still an assistant." *Id.* at 820, 95 S. Ct. at 2533 (emphasis added) (internal quotation marks omitted). The text of the Sixth Amendment accords with its original public meaning: "[T]he notion of compulsory counsel was utterly foreign to" the Founding generation, *id.* at 833, 95 S. Ct. at 2540, which believed instead "that self-representation was a basic right of a free people," *id.* at 830 n.39, 95 S. Ct. at 2538 n.39. "And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice." *Id.* at 833–34, 95 S. Ct. at 2540.

---

[2] Article I, Section 23 of our state constitution guards the analogous right. *See* N.C. Const. art. I, § 23 ("In all criminal prosecutions, every person charged with crime has the right . . . to have counsel for defense . . . .").

Thus, defendants retain the ability to waive counsel and proceed pro se, should they choose. *Id.* at 834, 95 S. Ct. at 2541. "[W]aiver is . . . an intentional relinquishment or abandonment of a known right or privilege." *State v. Harvin*, 382 N.C. 566, 585, 879 S.E.2d 147, 159 (2022) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938)). This means that the trial court may not accept a waiver of counsel unless the defendant "clearly and unequivocally" enters it "knowingly, intelligently, and voluntarily." *Id.* at 585, 879 S.E.2d at 160 (quoting *State v. Thomas*, 331 N.C. 671, 673–74, 417 S.E.2d 473, 475–76 (1992)). Waiver owes to choice both its justification in theory and application in practice. Axiomatically, waiver depends on choice.

Forfeiture is different. Forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Id.* at 586, 879 S.E.2d at 160 (quoting *State v. Schumann*, 257 N.C. App. 866, 879, 810 S.E.2d 379, 388 (2018)). A criminal defendant may forfeit his right to counsel "in situations evincing egregious misconduct." *Id.* at 586, 879 S.E.2d at 160 (quoting *Simpkins*, 373 N.C. at 535, 838 S.E.2d at 446).

> Courts have recognized forfeiture by misconduct when a defendant (1) engages in flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys; (2) employs offensive or abusive behavior, such as threatening counsel, cursing, spitting, or disrupting proceedings in court; or (3) refuses to acknowledge the trial court's jurisdiction or participate in the judicial process, or insists on nonsensical and nonexistent legal "rights."

*Simpkins*, 373 N.C. at 546, 838 S.E.2d at 452 (Newby, J., dissenting) (citation

modified).

This case provides a helpful illustration. In the span of four years, defendant cycled through five court-appointed attorneys. Although defendant's first three lawyers withdrew from the case due to, respectively, a conflict of interest, a job change, and personal reasons due to which the attorney could not effectively represent him, defendant took it upon himself to seek the dismissal of each of his final two lawyers. He accused each of ineffectiveness and unethical behavior.

By the time defendant sought to release his fifth and final attorney, both the trial court and State had expressed skepticism regarding his true motives. The State put it most bluntly at the 4 May 2023 pretrial waiver hearing:

> Your Honor, [defendant] is charged with six counts of first-degree sex offense with a child, twelve counts of taking indecent liberties with a child. There are four separate victims involved in this case. This is the second time that I have prepped these kids for trial. This is literally just creating more and more trauma for . . . four kids. The abuse started with these children when they were as young as five years old. They are now starting to almost get to the age where they are becoming adults. They would like this behind them. The State would like this behind [it]. This defendant has literally, every single time something starts to get towards a trial, has done some kind of thing with his attorney to get them to withdraw. We were set for trial with [defendant's third attorney, but defendant] did the same kind of stuff and [that attorney] was able to withdraw the week before trial. I just feel like these victims are getting kind of jerked around by the games that are being played, and I don't think that that's fair.
>
> In addition to that, this defendant has pro se filed motions for a speedy trial. The State has every single time

tried to get this to trial, [but defendant] has continued to
behave in ways that are making that impossible. The State
is ready to proceed on May 30th.

Still, defendant insisted that he could not proceed to trial with his fifth

attorney. For years, defendant had been mailing to the trial court handwritten

letters—stylized as self-declared "[w]aiver[s] of [c]ounsel"—expressing intent to "fire"

his lawyer and "go pro se." At the 4 May 2023 waiver hearing, defendant told the trial

court his fifth attorney "ha[d] done nothing that [he] asked," going so far as to imply

counsel had been working against his interests. When the trial court suggested the

fifth attorney might remain on defendant's case as standby counsel due to his

familiarity with the matter, defendant vehemently refused: "Appoint anybody but

him. I'll even take [the bailiff]. Anybody but [this attorney]."

And when the trial court eventually conducted the mandatory waiver colloquy,

*see* N.C.G.S. § 15A-1242 (2025), defendant responded with confidence:

> THE COURT: . . . [Y]ou do understand that this case is
> headed for trial?
>
> THE DEFENDANT: Oh, yes.
>
> . . . .
>
> THE COURT: . . . [F]or each of the [six] statutory sex
> offenses, you recognize that there is the possibility of
> life—not life, but [twenty-five] years minimum for each of
> those six?
>
> THE DEFENDANT: I'm very well aware, Your Honor.
>
> THE COURT: Are there any—are you aware of each—the
> elements in each part of the offenses against you?

> THE DEFENDANT: Yes, I am.
>
> THE COURT: All right, sir, I'm going to find that you have—that you have waived your right to the assistance of counsel.

At first glance, these actions appear to show an unambiguous intent to waive counsel. But the issue is closer than it appears. Defendant argues that he believed "waiver of counsel" meant something akin to dismissing his current attorney and requesting a new one. Therefore, defendant submits that he did not intend to represent himself and—as a result—did not waive his right to counsel knowingly, intelligently, and voluntarily. This argument finds some support in our precedents: "Statements of a desire not to be represented by court-appointed counsel do not amount to expressions of an intention to represent oneself." *State v. Hutchins*, 303 N.C. 321, 339, 279 S.E.2d 788, 800 (1981); *see also Thomas*, 331 N.C. at 675, 417 S.E.2d at 476 ("[D]efendant did not 'clearly and unequivocally' state a desire to proceed *in propria persona*. Instead, he was confused about the choices available to him.").

The record lends additional support to defendant's argument. For instance, defendant's 16 May 2022 letter requests both "a new attorney" and that defendant be allowed to proceed pro se. This contradiction suggests defendant may not have fully grasped what waiver entailed, at least at the time he sent this letter. Defendant also repeatedly confirmed to the trial court that he filed his March 2023 waiver of counsel to "get [his new attorney] off [his] case."

After considering the totality of the circumstances in the record, however, I fully agree with the majority in concluding that defendant waived his right to counsel.

But assume *arguendo* that defendant did not execute a valid waiver of counsel. That determination would not end our analysis. Instead, we would consider whether defendant forfeited his right. And here defendant's argument would collapse altogether.

At the forfeiture stage, problems with waiver—including the defendant's lack of knowledge or the inadequacy of the trial court's colloquy—fall by the wayside. *See Harvin*, 382 N.C. at 586, 879 S.E.2d at 160. The forfeiture inquiry asks whether the defendant's misconduct was so severe as to threaten the trial court's ability to exercise its "fundamental authority over the courtroom" and "provide orderly and just proceedings for all." *Simpkins*, 373 N.C. at 542, 549, 838 S.E.2d at 450, 454 (Newby, J., dissenting). Examples include the deployment of "flagrant or extended delaying tactics, such as repeatedly firing a series of attorneys." *Id.* at 546, 838 S.E.2d at 452 (citation modified).

Defendant engaged in that sort of misbehavior in this case. He lodged baseless accusations about several attorneys' competence and ethics and demanded the trial court furnish replacements for each one. The striking similarities between defendant's accusations call into question his sincerity. It strains credulity to believe the trial court appointed multiple consecutive lawyers who all decided to ignore this

case, lie to defendant and his family, and skip scheduled meetings.[3] The timing of defendant's several attempts to dismiss counsel—two of which occurred less than a month before the scheduled start of trial—casts further doubt on his claims.

An examination of the cold record in its entirety shows the trial court had ample reason to think defendant was "attempting to obstruct the proceedings and prevent them from coming to completion." *Id.* at 538, 838 S.E.2d at 447 (majority opinion). The trial court acted well within its discretion when it determined defendant was not entitled to a sixth attorney. The Court of Appeals erred in holding otherwise.

That conclusion becomes especially clear when an appellate court approaches this question with humility, keeping in mind the structural differences between appellate and trial courts and our respective strengths and weaknesses. And this leads me to my final point: in evaluating forfeiture, reviewing courts must remember that "[t]he trial court understands courtroom dynamics in ways that cannot be gleaned from the cold transcript." *Id.* at 546, 838 S.E.2d at 452 (Newby, J., dissenting) (citation modified). Unlike appellate courts, the trial court can "observe a defendant's behavior, evaluate his tone of voice, and assess the sincerity of his conduct . . . ." *Id.* at 547, 838 S.E.2d at 452. "Thus, as this Court has noted in numerous contexts, some decisions are best made by the trial court." *Id.* at 546, 838 S.E.2d at 452 (collecting

---

[3] In fact, defendant's fifth attorney averred the exact opposite: "*Defendant* refuses to discuss his case with this attorney or assist this attorney with his defense in any way. On [21 April 2023, for instance,] this attorney had scheduled an in person meeting with [d]efendant at the Wake County Detention Center. At that time, [d]*efendant* refused to meet with this attorney." (Emphases added).

cases); *see also, e.g.*, *State v. Wilson*, 388 N.C. 488, 489, 920 S.E.2d 832, 835 (2025) (explaining and applying deference in the context of *Batson* challenges). To pretend otherwise is appellate arrogance.

I agree with the majority that defendant waived his right to counsel and that this disposition makes it unnecessary to reach forfeiture. Nonetheless, I analyze forfeiture with hopes of clarifying a frequently misunderstood area of our law. I respectfully concur.